UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROBERT WAYNE CARNES } } Plaintiff, } } v. } AT&T, INC. and AT&T SERVICES, } INC., } } Defendants. } | Case No.: 2:18-cv-01639-ACA |

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert Wayne Carnes filed this lawsuit, alleging that his former employer, Defendant AT&T Services, Inc. ("AT&T"), discriminated against him because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), as amended by the Older Worker's Benefit Protection Act ("OWBPA").

Currently before the court is AT&T's motion to compel arbitration and stay proceedings. (Doc. 10). Because Mr. Carnes's claims are subject to binding arbitration, the court **GRANTS** the motion.[1]

---

[1] Mr. Carnes's complaint also names AT&T, Inc. as a Defendant. On May 28, 2019, the court dismissed without prejudice Mr. Carnes's claims against AT&T, Inc. pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. (Doc. 27).

## I. BACKGROUND

The court evaluates a motion to compel arbitration, using "a summary-judgment-like standard." *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016). The court examines the evidence presented to determine whether there is a genuine dispute of material fact concerning the formation of an arbitration agreement. *Id.* As a result, the court's description of the facts will incorporate evidence submitted to the court outside of the pleadings.

Mr. Carnes was employed by AT&T from January 25, 1995 until AT&T terminated his employment on October 30, 2017. (Doc. 1 at ¶¶ 7, 15, 29). In late 2011 and early 2012, AT&T adopted and distributed to employees a Management Arbitration Agreement ("Agreement"), pursuant to which employees and the company would arbitrate covered disputes. (Doc. 11-4 at ¶ 4; *see* Doc. 11-1 at 8–11).

The Agreement provides that "any dispute to which this Agreement applies will be decided by final and binding arbitration instead of court litigation." (Doc. 11-1 at 8). The Agreement "is governed by the Federal Arbitration Act," and "applies to any claim that [employees] have against . . . any AT&T company. . . ." (*Id.*). Of relevance to this action, in addition to this general statement regarding how the Agreement applies, the Agreement states specifically that "covered claims include without limitation those arising out of or related to your employment relationship, . . . termination, . . . retaliation, discrimination or harassment and claims arising under the . . . Age Discrimination in Employment Act." (*Id.* at 8–9).

On December 1, 2011, AT&T sent an email to Mr. Carnes at his unique AT&T-provided email address, RC6701@us.att.com. (Doc. 11-2 at 4, ¶ 8; Doc. 11-2 at 7; Doc. 11-3 at ¶ 6). The subject heading of the email was titled "Action Required: Arbitration Agreement." (Doc. 11-2 at 4, ¶ 8; Doc. 11-2 at 7). The email message stated, in relevant part:

> AT&T has created an alternative process for resolving disputes between the company and employees. Under this process, employees and the company would use independent third-party arbitration rather than courts or juries to resolve legal disputes. Arbitration is more informal than a lawsuit in court and may be faster.
>
> The decision on whether or not to participate is yours to make. To help you make your decision, **it is very important for you to review the Management Arbitration Agreement linked to this email**. It provides important information on the process and the types of disputes that are covered by the Agreement.
>
> Again, the decision is entirely up to you. To give you time to consider your decision, the company has established a deadline of no later than 11:59 p.m. Central Standard Time on Monday, Feb. 6, 2012 to opt out – that is, decline participation in the arbitration process – using the instructions below.
>
> If you do not opt out by the deadline, you are agreeing to the arbitration process as set forth in the Agreement. This means that you and AT&T are giving up the right to a court or jury trial on claims covered by the Agreement.
>
> **Instructions for "Opting Out" of the Agreement:**
>
> **To opt out of the agreement, after you open the attached document, follow the link provided there to the site where you will be able to electronically register your decision to opt out.**
>
> . . .

> **Important: February 6, 2012 is the deadline to act if you do not wish to resolve disputes through arbitration.**

(Doc. 11-1 at 6) (emphasis in original).

The end of the email message contained a hyperlink that stated "Click here to review." (*Id.*). The email to Mr. Carnes did not generate any type of automated reply or other message indicating that the email was not delivered. (Doc. 11-4 at ¶¶ 6–8).

According to AT&T's records, a user who was logged into AT&T's system under username RC6701 accessed the Agreement via AT&T's intranet page on the same day the email was delivered, December 1, 2011. (Doc. 11-2 at 4–5, ¶¶ 9-10; Doc. 11-2 at 16; *see* Doc. 11-1 at 3–4, ¶ 7). RC6701 was a unique user name assigned to Mr. Carnes, and users could not access the Agreement on the intranet page without providing a valid AT&T username and password. (Doc. 11-1 at 4, ¶ 9; Doc. 11-5 at ¶¶ 5–6). User RC6701 clicked a button titled "Review Completed" on the intranet page on which the Agreement was displayed. (Doc. 11-2 at 5, ¶ 11; Doc. 11-2 at 18). User RC6701 did not opt out of the Agreement. (Doc. 11-5 at ¶¶ 8–10).

On October 5, 2018, Mr. Carnes filed a complaint in this court, alleging that AT&T discriminated against him because of his age. (Doc. 1).

## II. ANALYSIS

AT&T moves to stay this action and compel arbitration, contending that under the Federal Arbitration Act ("FAA"), Mr. Carnes must arbitrate his claims against the company. (Doc. 11 at 9).

The FAA states that a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In determining whether parties agreed to arbitrate a particular dispute, the court considers whether "(a) the plaintiff entered into a written arbitration agreement that is enforceable under ordinary state-law contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). The court examines each issue in turn.

### 1. *Agreement to Arbitrate*

"The threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract.'" *Bazemore*, 827 F.3d at 1329 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). "[S]tate law governs the issue of the existence of an agreement to arbitrate under the FAA." *Id.* at 1330.

Under Alabama law, the elements of an enforceable contract include "an offer and an acceptance, consideration, and mutual assent to the terms essential to the formation of a contract." *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (internal quotation marks omitted). Mr. Carnes disputes the existence of a binding agreement to arbitrate. He claims that AT&T has not submitted sufficient evidence that it made an offer to him. (Doc. 19 at 8–11).[2] The court disagrees.

---

[2] Mr. Carnes does not challenge AT&T's ability to establish the remaining elements of an enforceable contract. (*See generally* Doc. 19).

An employer may communicate an offer to an employee "by issuance of [a] handbook, or otherwise," *Hoffman-La Roche, Inc. v. Campbell*, 512 So. 2d 725, 735 (Ala. 1987), as long as the terms of the contract are "sufficiently definite and certain," *White Sands Group, LLC. v. PRS II, LLC*, 998 So. 2d 1042, 1051 (Ala. 2008) (internal quotation marks omitted). AT&T's evidence establishes that on December 1, 2011, AT&T emailed a link to Mr. Carnes by which he could access the Agreement on the company's intranet and that someone using Mr. Carnes's unique username and password accessed and reviewed the Agreement that same day. (Doc. 11-1 at 3–4, ¶¶ 7, 9; Doc. 11-2 at 4–5, ¶¶ 9-10; Doc. 11-2 at 16, 18; Doc. 11-5 at ¶¶ 5–6). The email and the Agreement explained that unless Mr. Carnes's affirmatively opted-out of the Agreement by February 6, 2012, then he and the company would submit covered disputes to binding arbitration. (Doc. 11-1 at 6, 8). In addition, the contents of the email and the Agreement itself explain the terms of the arbitration policy in definite and certain terms. (*See id.* at 6, 8–11). Thus, AT&T has demonstrated that it communicated a clear offer to Mr. Carnes. *See Moore-Dennis v. Franklin*, 201 So. 3d 1131, 1143 (Ala. 2016) (recognizing as "sound" the rule that electronic notification of an arbitration contract suffices where employer provides "proof that the recipient (or someone with the recipient's username and password) accessed the specific email or visited the specific Web page containing the arbitration provision").

In an affidavit that he submitted in response to AT&T's motion to compel arbitration, Mr. Carnes claims that he has "no recollection whatsoever of the e-mail

the Defendants allege to have sent to me on December 1, 2011 containing a Management Arbitration Agreement." (Doc. 19-1 at ¶ 4). This statement is insufficient to create a question of fact with respect to AT&T's evidence that it did email Mr. Carnes a link to the Agreement and that someone using Mr. Carnes's unique AT&T username and password clicked a "Review Completed" button on the intranet page containing a copy of the Agreement. *See Chandler v. James*, 985 F. Supp. 1094, 1100 (M.D. Ala. 1997) ("[A] witness who states that he cannot remember whether or not an event alleged to have happened by the moving party actually took place does not help the nonmoving party to meet its burden. The nonmoving party must come up with evidence that negates the version of events alleged by the moving party—an acknowledgment that the event may have occurred, but the witness cannot remember, falls short."); *see also Wilson v. Alorica, Inc.*, 2018 WL 2229703, at *3 (N.D. Ala. May 16, 2018) (compelling arbitration where plaintiff asserted that he had no memory of executing the agreement in response to defendant's evidence showing that "plaintiff's unique login and password were used to access and acknowledge the Agreement").

The court also is not persuaded by Mr. Carnes's argument that AT&T must produce the actual email that it sent to him in order to demonstrate an offer. (*See* Doc. 19 at 11). Mr. Carnes has not cited, and the court has not located, authority stating that a court must have before it an original copy of a contract to determine whether an offer was made. AT&T has submitted sworn statements that a sample email is a true

7

and accurate copy of the email that AT&T sent to Mr. Carnes at his AT&T provided email address. (Doc. 11-1 at 3, ¶ 6; Doc. 11-2 at 3–4, ¶¶ 6–8; *see also* Doc. 11-1 at 6; Doc. 11-2 at 7, 9, 16, 18). Therefore, AT&T's failure to submit a copy of the email that it sent to Mr. Carnes is not fatal to AT&T's motion.

Because AT&T clearly communicated the terms of the Agreement to Mr. Carnes and because he did not opt out by the required deadline, the court finds that the parties entered an agreement to arbitrate. The court now must decide whether Mr. Carnes's claims fall within the scope of the agreement to arbitrate.

2. *Scope of Arbitration Agreement*

"The FAA creates a presumption in favor of arbitrability; so, parties must clearly express their intent to exclude categories of claims from their arbitration agreement." *Paladino v. Avnet Comput. Techs., Inc.*, 134 F.3d 1054, 1057 (11th Cir. 1998).

Mr. Carnes's complaint states claims for violation of the ADEA. (Doc. 1). Mr. Carnes has not disputed that his ADEA claims are covered by the Agreement. (*See generally* Doc. 19). There is no evidence that the parties intended to exclude ADEA claims from arbitration. And such a finding would fly in the face of the plain language of the Agreement which states expressly that it covers claims regarding Mr. Carnes's employment relationship with AT&T that arise under the ADEA. (Doc. 11-1 at 8–9). Accordingly, the court finds that Mr. Carnes's age discrimination claims fall within the scope of the Agreement and are subject to arbitration.

## III. CONCLUSION

For the reasons explained above, the court **GRANTS** AT&T's motion to compel arbitration and **STAYS** this proceeding.

The court asks the Clerk to **ADMINISTRATIVELY CLOSE** this case.

**DONE** and **ORDERED** this May 28, 2019.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE